UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| ED THOMASON, individually and on behalf of a class of similarly situated persons, | } } } } | |
| Plaintiff, | } } | |
| v. | } } | CASE NO. CV 07-B-1710-S |
| SURIN OF THAILAND, MOUNTAIN BROOK, INC.; SURIN MANAGEMENT, INC., | } } } } | |
| Defendants. | } } | |
| PETER KANAKIS, on behalf of a class of similarly situated persons, | } } } | |
| Plaintiff, | } } | |
| v. | } } | CASE NO. CV 07-B-1711-S |
| SURIN 280, LLC; SURIN MANAGEMENT, INC.,, | } } } | |
| Defendants. | } } | |
| BIJAN IRADJI, individually and on behalf of a class of similarly situated persons, | } } } } | |
| Plaintiff, | } } | |
| v. | } } | CASE NO. CV 07-B-1712-S |
| SURIN WEST, INC.; SURIN MANAGEMENT, INC.,, | } } } | |
| Defendants. | } | |

**MEMORANDUM OPINION**

On August 5, 2009, the court held a hearing in these cases to consider: (1) whether settlement between the parties should be given final approval, and (2) plaintiffs' Motion for Attorneys' Fees, (Case No. CV 07-SLB-1711-S, doc. 54).[1]  After considering the settlement agreement, all papers filed and proceedings held in these cases, and all oral and written comments received regarding the proposed settlement, the court finds that the proposed settlement is due to be approved and attorneys' fees awarded in the amount requested.

**I.      Case Summary**

Plaintiffs filed these three consolidated cases on behalf of themselves and similarly situated persons alleging that defendants Surin of Thailand, Mountain Brook, Inc. (CV 07-1710), Surin 280, LLC (CV 07-1711), and Surin West, Inc. (CV 07-1712), willfully violated the Fair and Accurate Credit Transaction Act of 2003 ("FACTA") by printing more than the last five digits of a credit or debit card number and/or the expiration date of the card on the receipt provided after a transaction.  Plaintiffs' claims are based on the Fair Credit Reporting Act's "willful non-compliance" civil liability provision, which would allow recovery of attorneys' fees and statutory damages ranging from $100 to $1,000 for each violation found to be willful.  *See* 15 U.S.C. § 1681n(a).

---

[1] Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.  Unless otherwise specified, document references are to the lead case, Case No. CV 07-SLB-1710-S.

Faced with the possibility of a crippling money judgment, defendants negotiated a settlement agreement with plaintiffs. (Doc. 35-2.) The plaintiffs and defendants in these three cases filed a Joint Motion for Order Conditionally Certifying a Class Settlement, (doc. 35), which the court granted after a hearing, (doc. 41). The court also granted the parties' request to allow the Complaint to be amended, (CV 07-1711, Docket Entry dated March 19, 2009), so that Surin Management, Inc. could be included as a defendant. Amended Complaints and Answers were filed in the three cases, and a new Settlement Agreement was filed to substitute the original agreement that did not include Surin Management, Inc. (CV 07-1712, Doc. 39-2.)

The court scheduled a hearing on August 5, 2009, to consider final approval of the settlement agreement and attorneys' fees. The court ordered any class member who objected to the settlement agreement to file a written objection with the Clerk of the Court by July 21, 2009, (doc. 41, p. 5), and no objections were received. Plaintiffs' counsel submitted a Motion for Attorneys' Fees that has not been opposed. (CV 07-1711, Doc. 54.)

## II.   Settlement Agreement

### A.   Legal Standard

A "district court must approve any settlement agreement in a class action." *Dikeman v. Progressive Express Ins. Co.*, 312 Fed.Appx. 168, 171 (11th Cir. 2008) (citing Fed. R. Civ. P. 23(e)). It may do so only after finding that the settlement is fair,

3

reasonable, and adequate. *Id*. "Where, as here, a class action has been certified specifically for the purpose of settlement, 'the district judge has a heavy duty to ensure that any settlement is fair, reasonable, and adequate and that the fee awarded plaintiffs' counsel is entirely appropriate.'" *Id*. (quoting *Piambino v. Bailey*, 757 F.2d 1112, 1138 (11th Cir. 1985)) (internal quotation omitted). "Determining the fairness of the settlement is left to the sound discretion of the trial court . . . ." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).

The Eleventh Circuit has recognized several factors which are relevant to whether a class settlement's terms are fair, reasonable, and adequate:

> (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

*Id*. There is a strong public policy favoring settlement of cases prior to trial. *Id*.

**B.     Discussion**

Defendants have agreed to an injunction requiring that they comply with the provisions of FACTA pertaining to the truncation of credit and debit card numbers and expiration dates. (Doc. 39-2, p. 17.) As an ancillary benefit, defendants will provide a minimum of 50,000 vouchers to participating claimants. (Doc. 39-2, pp. 17-18.) Defendants will provide vouchers for a minimum of thirty days, and if they have not distributed 50,000 vouchers within that initial thirty day period, they will continue

providing vouchers until 50,000 have been distributed. (Doc. 39-2, pp. 17-18.) Each class member is entitled to one voucher, which has no cash value and is freely transferable. (Doc. 39-2, pp. 17-18.) A voucher may be redeemed for one of the following food items: (a) one order of Pot Stickers (retail value of $6.50); (b) one order of Crab Angels (retail value of $4.00); (c) one bowl of Coconut Soup (retail value of $4.00); and (d) one bowl of Hot and Sour Soup (retail value of $5.00). (Doc. 39-2, p. 18.) Defendants will rely upon their point-of-sale computer equipment to track the number of vouchers redeemed. (Doc. 39-2, p. 18.) In addition to the injunction and vouchers, the named plaintiffs in these three cases—Bijan Iradji, Peter Kanakis, and Ed Thomason—will each receive $2,000.00. (Doc. 39-2, p. 19.) The total aggregate benefit conferred upon the plaintiffs—including attorneys' fees—ranges from $306,000.00 to $431,000.00. (CV 07-1711, Doc. 54, p. 3.)

Given there is no opposition to this settlement agreement, and in light of the fact that defendants are facing the possibility of millions of dollars of statutory damages, the court finds that the settlement is not unreasonable. Although the settlement seems large at first glance, it is almost certainly less than statutory damages would have been had the case proceeded to trial.

During the period of time that the three lawsuits cover—December 4, 2006, to September 28, 2007—defendants estimate that they failed to truncate credit card numbers

on roughly 100,000 transactions. (CV 07-1711, Doc. 47-11, p. 4.)[2] Each such transaction carries with it the potential for a minimum statutory fine of $100 and maximum of $1000. *See* 15 U.S.C. § 1681n(a). Assuming the defendants' estimate is correct, they are facing a statutory fine of at least $10,000,000. A judgment in that amount would, according to defense counsel, put the defendants out of business.

In light of that potential penalty, and the fact that there has been no opposition to the proposed settlement agreement, the court finds a settlement that will cost the defendants $306,000.00 to $431,000.00 is reasonable. The court also finds that the $2000.00 award to each named plaintiff is *de minimis* in comparison to the total aggregate benefit conferred upon unnamed class members and is therefore not unfair. *See Holmes v. Continental Can Co.*, 706 F.2d 1144, 1147 (11th Cir. 1983) ("When a settlement explicitly provides for preferential treatment for the named plaintiffs in a class action, a substantial burden falls upon the proponents of the settlement to demonstrate and document its fairness.").

### III.  Motion for Attorneys' Fees

#### A.  Legal Standard

"The district court has wide discretion to award attorneys' fees based on its own expertise and judgment because of 'the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are

---

[2] At the August 5, 2009, hearing in this case, defense counsel estimated there were 150,000 transactions during the covered period.

factual matters." *Dikeman*, 312 Fed. Appx. at 171. However, a district court may not provide a simple conclusory statement that the fees requested are reasonable. *Id*. Instead, the court must provide a concise but clear explanation of its reasons for the fee award. *Id*.

Whether the court uses the lodestar or the percent-of-the-common-fund method to determine a fee award, it should apply the twelve factors listed in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989)), to determine the award's appropriate size. *See Dikeman*, 312 Fed. Appx. at 172 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)). Those factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717-19.

In addition to the *Johnson* factors set forth above, *Camden I Condominium Association, Inc., v. Dunkle*, 946 F.2d 768, 775 (11th Cir. 1991), lists other pertinent factors that will affect the appropriate percentage to be awarded as a fee in any particular case, such as: "the time required to reach a settlement, whether there are any substantial

objections by class members or other parties to the settlement terms or the fees requested by counsel, any non-monetary benefits conferred upon the class by the settlement, and the economics involved in prosecuting a class action." *Id*.

*Camden* also recognizes that there may be factors unique to a case which will be relevant to determinating the percentage awarded to attorneys, and accordingly, the court should provide specific reasons for the percentage selected, listing the factors relied upon and how each affected the court's decision. *Id*. At the time *Camden* was decided, "[t]he majority of common fund fee awards [fell] between 20% to 30% of the fund" and district courts had begun to view an award of 25% as a benchmark. *Id*. at 774-75.

**B.    Discussion**

Plaintiffs' counsel moved for attorneys' fees totaling $100,000.00, (CV 07-1711, doc. 54), an amount that they claim is reasonable under either the percent-of-the-common -fund doctrine or the lodestar analysis, (doc. 55, p. 2.). As of July 21, 2009, the lodestar, costs, and expenses incurred by plaintiffs' counsel and the classes totaled $155,004.00. (Doc. 54, p. 3.) Plaintiffs' counsel claims that their requested fee of $100,000.00 represents less than 24% of the total aggregate value of the settlement, and it is therefore reasonable under *Camden I*, 946 F.2d at 775. (Doc. 54, p. 4.)

Plaintiffs' counsel provides numerous reasons to support its fee request: (1) the case was one of first impression in the Northern District when filed, and thus required extensive research of other jurisdictions and a complex federal statute, in addition to class

8

settlement and administration, all of which shows that the case was both novel and difficult; (2) the case required a great deal of skill and experience in class action matters, which plaintiffs' counsel used to achieve an efficient resolution of the case; (3) plaintiffs' counsel was precluded from taking other cases because of the over 500 hours it spent on this matter; (4) the fee falls within the customary range of other common-fund awards; (5) plaintiffs' counsel took the case with an agreement providing for a 50% contingency rate, which they have reduced, and which was also a significant gamble on their part; (6) attorneys' fees awards in other cases are similar; (7) the non-monetary benefits conferred upon the class—coupons and injunctive relief; (8) the litigation has not been protracted and expensive; and (9) there were no objections to the settlement agreement or fee request. Based on these reasons, the court finds that an award of attorneys' fees totaling $100,000.00 is not unreasonable.

## IV.   Conclusion

An Order in accordance with this Memorandum Opinion will be entered contemporaneously herewith.

**DONE**, this 14th day of August, 2009.

*Sharon Lovelace Blackburn*
SHARON LOVELACE BLACKBURN
CHIEF UNITED STATES DISTRICT JUDGE